**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **ERNIE JUNIOR PEREZ**, | Case No. 2:14-cv-00779-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **BRAD CAIN**, Superintendent of Snake River Correctional Institution, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Ernie Junior Perez ("Petitioner"), an individual in custody at Eastern Oregon Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254 ("Section 2254"). Because Petitioner's claims are barred by the applicable one-year statute of limitations and procedurally defaulted, the Court denies the Third Amended Petition for Writ of Habeas Corpus (ECF No. 60) and denies a certificate of appealability.

///

PAGE 1 – OPINION AND ORDER

# BACKGROUND

## I.    The Murders of Gayle and Becky Goode

On two consecutive days in late April 2005, Petitioner, Manuel Lopez Delgado ("Delgado"), and German Austin burglarized a residence in Donald, Oregon, stealing firearms, ammunition, and other valuables. (Resp't Ex. 145 (ECF No. 29-1) at 50.[1]) Following the second burglary, they were seen leaving the residence by Gayle and Becky Goode, who lived nearby. (Resp't Ex. 107 (ECF No. 27-1) at 217.) The Goodes confronted Petitioner and his accomplices and fired a gun in the air to scare them away. (*Id.*) Delgado fired a gun in the Goodes' direction as the trio fled, and they ultimately abandoned the stolen property in a nearby field. (Resp't Ex. 145 (ECF No. 29-1) at 50.)

Petitioner and Delgado returned the next day and entered the Goodes' home, which they shared with their four-year-old granddaughter, Gayle Goode's elderly mother, and Gayle Goode's sister. (Resp't Exs. 107 (ECF No. 27-1) at 218; 145 (ECF No. 29-1 at 41-42.) Petitioner and Delgado both carried loaded firearms—a .45 caliber semi-automatic pistol and a shotgun, respectively—and Petitioner wore latex gloves and a mask to conceal his identity. (Resp't Exs. 107 (ECF No. 27-1) at 218; 145 (ECF No. 29-1) at 50.) Upon entering the home, they encountered Gayle Goode, who attempted to take Delgado's shotgun. (Resp't Ex. 107 (ECF No. 27-1) at 218.) During the struggle, Petitioner turned the pistol's safety off and pointed it at Gayle Goode's head. (*Id.*) At the same moment, Becky Goode emerged from a bedroom armed with a .38 caliber

---

[1] The Court notes that Respondent's Exhibits are filed in three parts, found at ECF Nos. 27, 28, and 29, and lack consistent exhibit pagination. To avoid confusion and ensure ease of reference, when citing Respondent's Exhibits, the Court will identify the exhibit number, the docket entry number where the exhibit can be found, and the ECF-assigned page number located at the top of each page.

revolver and began firing, inflicting non-fatal wounds to both Petitioner and Delgado. (*Id.* at 218-19.) Despite his injuries, Petitioner returned fire, killing Gayle Goode with a single shot to the head before killing Becky Goode with a shot to the throat. (*Id.* at 219.) Petitioner and Delgado then fled the scene with the assistance of a getaway driver but were apprehended by law enforcement a short time later. (Resp't Exs. 107 (ECF No. 27-1) at

## II.   Juvenile and Trial Court Proceedings

On May 2, 2005, the State filed a petition in the Marion County juvenile court seeking to prosecute Petitioner, who was fourteen years old at the time of the murders, as an adult. (Resp't Ex. 145 (ECF No. 29-1) at 1-2.) The petition specified that Petitioner had committed acts that would constitute crimes under state law if committed by an adult, including aggravated murder. (*Id.*) Pursuant to former Oregon Revised Statute ("ORS") § 419C.352 (2005),[2] a youth who is under fifteen years of age may be "waived" into adult court if, among other things, the juvenile court makes required findings under ORS 419C.349(3) and (4). Under those provisions, a juvenile court must find that "[t]he youth at the time of the alleged offense was of sufficient sophistication

---

[2] *Former* ORS 419C.352 provides, in pertinent part:

The juvenile court, after a hearing, . . . may waive a youth under 15 years of age at the time the act was committed to circuit court for prosecution as an adult if:

(1) The youth is represented by counsel during the waiver proceedings;

(2) The juvenile court makes the findings required under ORS 419C.349(3) and (4); and

(3) The youth is alleged to have committed an act or acts that if committed by and adult would constitute one or more of the following crimes;

(a) Murder or any aggravated form thereof[.]

and maturity to appreciate the nature and quality of the conduct involved" and that "retaining jurisdiction will not serve the best interests of the youth and society."[3] OR. REV. STAT. § 419C.349(3), (4).

Although Petitioner's Trial Counsel identified "some favorable evidence" to present at a waiver hearing, he believed that it was "very likely" that the juvenile court would waive Petitioner into adult court.[4] (Resp't Ex. 146 (ECF No. 29-1) at 55-56.) Trial Counsel also believed that, given

---

[3] To make the latter finding under ORS § 419C.349(3), the juvenile court must consider:

(a) The amenability of the youth to treatment and rehabilitation given the techniques, facilities and personnel for rehabilitation available to the juvenile court and to the criminal court that would have jurisdiction after transfer;

(b) The protection required by the community, given the seriousness of the offense;

(c) The aggressive, violent, premeditated, or willful nature in which the offense was alleged to have been committed;

(d) The previous history of the youth, including:

(A) Prior treatment efforts and out-of-home placements; and

(B) The physical, emotional and mental health of the youth;

(e) The youth's prior record of acts that would be crimes if committed by an adult;

(f) The gravity of the loss, damage or injury caused or attempted during the offense;

(g) The prosecutive merit of the case against the youth; and

(h) The desirability of disposing of all cases in one trial if there were adult co-offenders.

(*Former* OR. REV. STAT. § 419C.349(4) (2005).

[4] In a letter, Trial counsel noted that several factors informed his opinion that waiver was likely, explaining: "1) . . . [T]here are two victims in the case; 2) . . . [I]t is a home invasion case; 3) This wasn't some crime of passion — you went to the neighborhood three times with the intent to commit serious felony crimes; 4) The preliminary report from our psychological expert indicates that you fit the criteria to be waived to adult court; 5) Your poor school performance; 6) Your association with known gang members; 7) The Marion County juvenile department will recommend waiver to adult court; and 8) There is no double homicide case I am aware of in

PAGE 4 – OPINION AND ORDER

the nature of the case and the "overwhelming" evidence against Petitioner, there was "no hope that [he] would not be convicted on at least two of the aggravated murder charges" if the case went to trial. (*Id.* at 55.) Trial Counsel therefore advised Petitioner that he would have "maximum leverage" to negotiate a settlement prior to a waiver hearing, and that the State would have "no incentive to offer . . . any type of deal" once Petitioner was waived to adult court. (*Id.* at 59.)

Following extensive negotiations, including a day-long judicial settlement conference, the State proposed that if Petitioner would stipulate to waiver and agree to plead guilty to four counts of aggravated murder, two of which would merge, it would recommend that Petitioner receive a life sentence without the possibility for parole for thirty years on both aggravated murder charges, with ten years of the second charge running concurrently with the first.[5] (*Id.* at 58-59.) Therefore, if Petitioner accepted the offer, he would receive a life sentence with the possibility of parole after fifty years. (*Id.* at 59.)

Petitioner ultimately decided to accept the offer and signed a plea petition on February 2, 2006. (Resp't Ex. 105 (ECF No. 27-1) at 28-31.) In doing so, Petitioner acknowledged that he had entered the Goodes' home "without permission and with the intent to steal property[,]" and that while inside he had "personally and intentionally fired three shots from a gun" that struck and killed Gayle and Becky Goode. (*Id.* at 30.) Petitioner also confirmed his understanding of the terms of the plea agreement, including his agreement "to stipulate to waiver from juvenile court to adult court pursuant to ORS 419C.352 and ORS 419C.349(3) and (4)[.]"

---

Oregon where the youth was not waived to adult court." (Resp't Ex. 146 (ECF No. 29-1) at 56-57.)

[5] Under the final terms of the plea agreement, Petitioner was free to argue to the sentencing judge that his sentences should run fully concurrently so that he would be eligible for parole after thirty years. (Resp't Ex. 123 (ECF No. 27-2) at 205.)

During a plea hearing on February 3. 2006, the trial court ensured that Petitioner had reviewed the order of stipulated waiver, understood its consequences, and had sufficient opportunity to consult his attorneys and his family before agreeing to waiver. (Resp't Ex. 106 (ECF No. 27-1) at 34-37.) Satisfied, the trial court found, based on the statutory factors and a waiver study[6] prepared by the Marion County Juvenile Department, that Petitioner "at the time of the alleged offense was of sufficient sophistication and maturity to appreciate the nature and quality" of his conduct, and that "retaining jurisdiction [would] not serve the best interests of the youth and society and therefore is not justified[.]" (*Id.* at 38.) Then, after a brief colloquy, the trial court accepted Petitioner's guilty pleas, finding that they were "freely, voluntarily, [and] intelligently made[.]" (*Id.* at 42-49.)

In a separate proceeding, the trial court sentenced Petitioner in accordance with the plea agreement. Although Trial Counsel argued that Petitioner's sentences should run fully concurrently as the parties had agreed, the trial court declined to stray from the State's recommendation, explaining:

> This wasn't just a bad mistake, Mr. Perez, or an error. We make that on our tax returns. This was the intentional murder, the intentional taking of two innocent lives, people that hadn't done anything to you. I realize you got shot in the process of all this, but suffice to say your attorney has been smart enough not to bring that up as some kind of mitigation. You're the one that started all this, you're the one with that other individual that went in there armed, and . . . I don't know that there's enough evidence before me to say that you went in there with the intention of shooting the Goodes, but you certainly went in there armed. You went in there with a . . . loaded weapon, as was pointed out to me. I know you're a young man, you

---

[6] The Waiver Study included an in-depth analysis of the required factors under ORS 419C.349(4). (Resp't Ex. 145 (ECF No. 29-1) at 46-51.) The Marion County Juvenile Department ("MCJD") ultimately concluded that if Petitioner's case remained in juvenile court, "all supervision would cease upon [Petitioner's] 25th birthday," presenting a danger to the community and a situation in which Petitioner would "have less of a motivation . . . to address and resolve the issues" underlying his criminal behavior. (*Id.* at 51.) The MCJD thus recommended Petitioner's waiver to adult court. (*Id.*)

PAGE 6 – OPINION AND ORDER

apparently just turned 15 and I -- believe me, I've been wrestling with that fact . . . as we came up to this sentencing. Mr. Perez, you're the one that did the shooting. You intentionally took the lives of two people. What you, through your attorneys, are asking of me this morning is to ignore the second death and say, okay, we'll give you the life with 30 years for the first death . . . and then we'll just toss the other one in.

. . . .

. . . [T]he legal effect of giving life with 30 years essentially is ignoring the fact that not one but two people died here. I'm not going to ignore that. Certainly the family can't ignore that.

(Resp't Ex. 107 (ECF No. 27-1) at 102-04.) The trial court thus imposed a life sentence with the possibility of parole after thirty years on each aggravated murder conviction, with twenty years on the second to be served consecutively, for a total of fifty years of incarceration before Petitioner will be eligible for parole. (*Id.* at 104.)

## III.   Direct Appeal

Petitioner appealed, but appellate counsel filed a *Balfour* brief verifying that he had not "identified any arguably meritorious issue[s] on appeal."[7] (Resp't Ex. 108 (ECF No. 27-1) at 113-14.) Appellate counsel noted that Petitioner also had "not identified any claim of error for inclusion in the brief" and therefore had declined to file a "Section B" brief. (*Id.* at 114.) On August 22, 2007, the Oregon Court of Appeals affirmed without opinion. *State v. Perez*, 214 Or. App. 571 (2007). Petitioner did not seek review.

## IV.   Initial Postconviction Proceedings

On August 8, 2008, Petitioner file a *pro se* petition for postconviction relief ("PCR"). (Resp't Ex. 110 (ECF No. 27-1) at 141-42.) In his counseled second amended petition, Petitioner

---

[7] Under *State v. Balfour*, 311 Or. 434, 451-52 (1991), an attorney is not ethically bound to withdraw when faced with only non-meritorious issues on appeal. Rather, the attorney may file an appellant's brief divided into two parts, with Section A containing a brief statement of the case sufficient to "apprise the [appellate] court of the jurisdictional basis for the appeal," and Section B containing any assignments of error the appellant wishes to raise.

asserted that his trial and appellate attorneys had been constitutionally ineffective in several respects. (Resp't Ex. 112 (ECF No. 27-1) at 151-54.) As relevant here, Petitioner alleged that trial counsel provided ineffective assistance by "erroneously advis[ing] petitioner to stipulate to the waiver . . . remand hearing to adult court and forego the protections of a juvenile waiver hearing under ORS 419C.352." (*Id.* at 152.) Petitioner also alleged that trial counsel was ineffective in "advis[ing] petitioner to accept the plea offer . . . [w]hen trial counsel knew or should have known petitioner was ineligible for parole after 50 years, notwithstanding the language of the plea offer." (*Id.*)

After a trial in September 2011, the PCR court rejected Petitioner's ineffectiveness claim with respect to the waiver issue, concluding that trial counsel had made a valid strategic choice in advising Petitioner to stipulate to waiver to adult court. (Resp't Ex. 161 (ECF No. 29-2) at 140-44.) With respect to the parole eligibility issue, the PCR court found that although the terms of the plea agreement provided that Petitioner would be eligible for parole after fifty years of imprisonment, the Oregon Department of Corrections ("ODOC") had interpreted the judgment of conviction in a manner that would require Petitioner to serve sixty years before becoming parole eligible. (*Id.* at 144-45.) Noting that ODOC's interpretation deprived Petitioner of "the potential benefit of his plea bargain[,]" and that such "injustice is one which the [PCR] Court is entitled to, and can, remedy[,]" the PCR Court granted relief and entered an amended judgment to "achieve the result of the sentence concessions bargained for and agreed to by the parties and the trial court." (*Id.* at 145; Resp't Ex. 162 (ECF No. 29-2) at 155-56.) The PCR court denied relief on Petitioner's remaining claims.

Petitioner appealed the PCR court's judgment *pro se*, asserting ten assignments of error. (Resp't Ex. 163 (ECF No. 29-2) at 158-211.) Notably, Petitioner alleged that the PCR court

erroneously "impos[ed] an unlawful sentence . . . as a result of resentencing Petitioner[,]" arguing that Oregon law required his sentences to "be imposed either fully concurrent or fully consecutive." The Oregon Court of Appeals addressed this argument in a written opinion, concluding that because "nothing . . . limits the court in the exercise of its discretion from imposing partially consecutive sentences and concurrent sentences[,]" the PCR court had "correctly determined that [P]etitioner was entitled to relief, and granted appropriate relief." *Perez v. Persson*, 258 Or. App. 684, 687-88 (2013). The Court of Appeals rejected Petitioner's other assignments of error without discussion. *Id.* at 685.

Petitioner then filed a *pro se* petition for review in the Oregon Supreme Court, alleging that the "Court of Appeals erred when it affirmed the underlying [PCR] court's amended judgment." (Resp't Ex. 169 (ECF No. 29-2) at 358.) Specifically, Petitioner argued that "the amended judgment ordered by the [PCR] court, and [affirmed by] the Court of Appeals . . . , is unlawful and an inappropriate remedy" because ORS 163.105 "allow[s] the [parole] board to override Petitioner's amended sentence" and consider parole after thirty, rather than fifty, years. (*Id.* at 358-59.) Petitioner further argued that if the Oregon Supreme Court agreed with his novel reading of ORS 163.105, "trial counsel should have been found to have been unconstitutionally inadequate for advising Petitioner to accept the plea offer [requiring fifty years] in violation of Petitioner's rights under the Sixth Amendment to the United States Constitution . . . to adequate assistance of counsel." (*Id.* at 359.) The Oregon Supreme Court denied review, (Resp't Ex. 170 (ECF No. 29-2) at 369), and the appellate judgment issued on May 27, 2014 (Resp't Ex. 171 (ECF No. 29-2) at 371.)

///

///

PAGE 9 – OPINION AND ORDER

**IV.    Federal Habeas Proceedings Before Stay**

On May 6, 2014,[8] Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court. Petitioner subsequently filed an Amended Petition on June 9, 2014, alleging that ORS 419C.352 violated the Eighth Amendment's prohibition on cruel and unusual punishment and his right to due process under the Fourteenth Amendment, and that his conviction was "obtained by an invalid waiver of [his] right to a waiver hearing under ORS 419C.352." (Am. Pet (ECF No. 12) at 3-4.) Respondent filed a response (ECF No.25) on December 22, 2014, and the parties exchanged briefing until the Court *sua sponte* appointed counsel to represent Petitioner in this action on May 21, 2015 (ECF No. 46).

On March 21, 2016, Petitioner, with the assistance of appointed counsel, filed the Third Amended Petition raising ten claims for relief, as follows:

4(a).    [Petitioner's] right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution was violated by his prosecution, conviction, and sentence as an adult pursuant to the juvenile court waiver provisions of Or. Rev. Stat. § 419C.352 and Or. Rev. Stat § 419C.349(3) and (4) for acts committed at age 14.

4(b).    [Petitioner's] right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution was violated by his prosecution, conviction, and sentence as an adult pursuant to the juvenile court waiver provisions of Or. Rev. Stat.  419C.352 and Or. Rev. Stat. 419C.349(3) and (4) for acts committed at age 14.

4(c).    [Petitioner's] right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution was violated by his transfer to adult court by stipulation without a full and fair hearing.

---

[8] May 6, 2014 is the date on which Petitioner signed the Petition and presumably handed it to prison officials for mailing. *See Campbell v. Henry*, 614 F.3d 1056, 1058-59 (9th Cir. 2010) (explaining that under the mailbox rule, a *pro se* habeas petition "is deem filed when [and individual in custody] hand[s] it over to prison authorities for mailing to the relevant court").

4(d).    [Petitioner's] right to due process of law guarantee by the Fourteenth Amendment to the United States Constitution was violated by his transfer to adult court by stipulation without a full and fair hearing.

4(e).    [Petitioner] did not receive effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when counsel failed to investigate and advise him of available defenses.

4(f).    [Petitioner] did not receive effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when counsel failed to request a *Miranda* evaluation to investigate whether Mr. Perez's inculpatory statements might be subject to suppression.

4(g).    [Petitioner] did not receive effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when counsel failed to accurately advise petitioner of the possibility of a Second Look Hearing pursuant to Or. Rev. State. § 420A.203.

4(h).    [Petitioner] did not receive effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when counsel advised him to stipulate to waiver of the juvenile court's exclusive jurisdiction, foregoing the protections of a waiver hearing pursuant to ORS 419C.352.

4(i).    [Petitioner] did not receive effective assistance of trial counsel, as guaranteed by the Sixth Amendment to the United States Constitution, when counsel advised him to accept the plea offer from the Marion County District Attorney.

4(j).    [Petitioner's] right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution was violated by the amended judgment that imposed an unlawful sentence.

(Third Am. Pet. (ECF No. 60), at 3-4.) Appointed counsel then filed a brief in support of the Third Amended Petition on November 1, 2016, advancing the merits of claims 4(h) and 4(i). (Br. in Supp. of Third Am. Pet. (ECF No. 71) at 26-35.) Soon thereafter, on January 5, 2017, the Court granted the parties' joint request to stay these proceedings while Petitioner pursued a second PCR petition in state court. (ECF Nos. 75, 76.)

///

///

PAGE 11 – OPINION AND ORDER

## V.    Second PCR Proceedings

Petitioner, proceeding *pro se*, filed a second petition for PCR relief in September 2016

after the Oregon Supreme Court issued a decision in *State v. J.C.N.-V.*, 359 Or. 559 (2016). In

that case, the Oregon Supreme Court interpreted ORS 419C.349(3) for the first time, concluding

that to find that a juvenile "was of sufficient sophistication and maturity to appreciate the nature

and quality of the conduct involved" as required for waiver, the juvenile court must find that "the

youth possesses sufficient adult-like intellectual, social and emotional capabilities to have an

adult-like understanding of the significance of his or her conduct, including its wrongfulness and

its consequences for the youth, victim, and others." *J.C.N.-V.*, 359 Or. at 597.

In his second amended petition, Petitioner alleged that the juvenile court violated his

federal due process rights when it accepted his stipulated waiver to adult court without

"undertak[ing] the kind of analysis contemplated [by] . . . *J.C.N.-V.*" (Resp't Suppl. Exs. (ECF

No. 127), Ex. 177 at 5.[9]) The PCR court ultimately dismissed the second amended petition as

untimely and successive under ORS 138.510(3)[10] and ORS 138.550(3)[11], and rejected

Petitioner's argument that the "escape clauses" of those provisions—which allow a petitioner to

---

[9] When citing to Respondent's Supplemental Exhibits, the Court refers to the exhibit number and pagination located in the lower right corner on each page.

[10] ORS 138.510(3) provides, in pertinent part, that "[i]f an appeal is taken," a PCR petition must be filed within two years from "the date the appeal is final in the Oregon appellate courts[,]" unless "the court on hearing a subsequent petition finds ground for relief asserted which could not reasonably have been raised in the original or amended petition[.]"

[11] ORS 138.550(3) provides that "[a]ll grounds for relief claimed by petitioner in a [PCR petition] must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the originally or amended petition."

raise claims that "could not reasonably have been raised in the original or amended petition"—
applied. (Resp't Suppl. Exs. 181 at 1-3; 184.)

On appeal, Petitioner did not dispute that the second amended petition was both untimely
and successive. *Perez v.Cain*, 297 Or. App. 617, 622 (2019). Instead, Petitioner argued that he
was "entitl[ed] . . . to the benefit of the statutory escape clauses" under ORS 138.510(3) and
138.550(3) because "*J.C.N.-V.* so changed the law regarding waivers to adult court under ORS
419C.349 that he could not reasonably have raised his challenge to the juvenile court's
acceptance of his stipulated waiver until after the decision was issued[.]" *Id.*

The Oregon Court of Appeals disagreed, explaining that the required finding under ORS
419C.349(3) was drawn from *Kent v. United States*, 383 U.S. 541 (1966), and that the waiver
study submitted "in connection with petitioner's stipulated waiver states affirmatively that it used
the *Kent* criteria to evaluate the waiver under ORS 419C.349." *Perez*, 297 Or. App. at 626.
Because Petitioner could have challenged the trial court's misapplication of those criteria or its
failure to properly conduct "the kind of inquiry contemplated by the *Kent* criterion," the
appellate court concluded that "petitioner reasonably could have raised the issue at that time and,
certainly, by the time of his first post-conviction proceeding." *Id.* The Oregon Court of Appeals
thus found that Petitioner's claim did not fall within the statutory escape clauses and affirmed the
PCR court's judgment. *Id.* at 626-27.

Petitioner then filed a petition for review with the Oregon Supreme Court, alleging that
the Oregon Court of Appeals had erred in its application of the escape clauses under ORS
138.510(3) and 138.550(3). (Resp't Suppl. Ex. 198.) The Oregon Supreme Court granted review
and, in a written opinion, concluded that ORS 138.550(3) barred Petitioner's successive PCR
petition. *Perez v. Cain*, 367 Or. 96, 113-14 (2020). Although the Oregon Supreme Court agreed

PAGE 13 – OPINION AND ORDER

that "the meaning of ORS 419C.439(3) was not settled by any appellate decision prior to *J.C.N.-V.*," it rejected Petitioner's argument that the unsettled nature of the law was enough to foreclose Petitioner from reasonably advancing his claim during his first PCR proceedings. *See id.* at 109-10 (noting that "the absence of a settled answer to a legal question is insufficient, on its own, to make a claim one that could not reasonably have been raised at an earlier time"). The Supreme Court also rejected Petitioner's argument that it had interpreted ORS 138.550(3) in a "surprising manner" in *J.C.N.-V.*, explaining that "*J.C.N.-V.* interpreted a longstanding statute for the first time, based on interpretive materials and tools that were readily available in 2008" when Petitioner filed his initial PCR petition. *Id.* at 110-11. The Supreme Court thus held that the PCR court had correctly dismissed Petitioner's second PCR petition. *Id.* at 114.

The appellate judgment issued on January 29, 2021. (Resp't Suppl. Ex. 205.)

## VI.    Federal Habeas Proceedings After the Stay is Lifted

After the appellate judgment issued, the parties requested thirty days "to review the case in its entirety, and thereafter confer about the proper course of action to propose to this Court." (Status Report Dated Mar. 29, 2021 (ECF No. 112) at 2.) The parties subsequently proposed that Respondent would file a response to Petitioner's Brief in Support of the Third Amended Petition, which had been filed before the stay, and that Petitioner thereafter would file a reply. (Status Report Dated Apr. 29, 2021 (ECF No. 114) at 1-2.). On May 3, 2021, the Court lifted the stay and adopted the parties' proposed briefing schedule. (ECF No. 115.)

Respondent subsequently filed his response. (ECF No. 125.) Petitioner, however, affirmatively declined to file a reply to address the procedural defenses asserted in the response. (*See* Decl. of Anthony Bornstein in Supp. of Mot. for Leave to File Suppl. Br. (ECF No. 133) ¶¶ 4, 10 (acknowledging that Defendants asserted in the response that claims 4(h) and 4(i) are

PAGE 14 – OPINION AND ORDER

untimely and procedurally defaulted but nevertheless declining to file a reply).) Instead, Petitioner moved to file a supplemental brief, in which he contends that the trial court violated his federal due process rights when it accepted his stipulation to waiver to adult court without adhering to the statutory requirements for waiver as interpreted by *J.C.N.-V.* (Suppl. Br. in Supp. Third Am. Pet. (ECF No. 135) at 9.) After nearly nine years, these arguments now are before the Court.

## DISCUSSION

### I.    Claims 4(h) and 4(i) — Ineffective Assistance of Counsel

In Claims 4(h) and 4(i) of the Third Amended Petition, Petitioner alleges that trial counsel was ineffective when he advised Petitioner to stipulate to waiver into adult court and to accept the plea offer. (Third Am. Pet. at 4.) Respondent argues that Petitioner is not entitled to habeas relief on Claims 4(h) and 4(i) because they are untimely. This Court agrees.

#### A.    Legal Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year statute of limitations applies to a petition for a writ of habeas corpus filed "by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). Unless otherwise tolled or subject to delayed accrual, the limitations period commences when the judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The period of direct review includes the ninety-day period within which a petitioner can petition for writ of certiorari with the United States Supreme Court, whether he files such a petition. *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).

The limitations period is statutorily tolled during the pendency of a "a properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). A properly filed application remains "pending until it has achieved final resolution through the

PAGE 15 – OPINION AND ORDER

State's post-conviction procedure." *Biggs v. Duncan*, 339 F.3d 1045, 1047-48 (9th Cir. 2003)

(quoting *Carey v. Saffold*, 536 U.S. 214, 220 (2002)) (internal quotations omitted). The

limitations period is not tolled, however, "from the time a final decision is issued on direct state

appeal [to] the time the first state collateral challenge is filed." *Grant v. Swarthout*, 862 F.3d 914,

918 (9th Cir. 2017) (quoting *Roy v. Lampert*, 465 F.3d 964, 968 (9th Cir. 2006)).

### B.      Analysis

Petitioner's direct appeal proceedings became final, and the one-year statute of

limitations began to run, on September 26, 2007.[12] Petitioner then signed his initial PCR petition

on August 8, 2008, tolling the AEDPA's statute of limitations. Between September 26, 2007, and

August 8, 2008, 317 days accrued.

The appellate judgment resolving Petitioner's initial PCR petition issued on May 27,

2014. Petitioner, who previously had filed his original habeas petition on May 6, 2014, filed an

amended petition on June 9, 2014, challenging the constitutionality of ORS 419C.352 and the

validity of his waiver under that statute. Petitioner did not include in the amended petition claims

4(h) and 4(i) concerning the ineffective assistance of trial counsel. Then, on March 21, 2016,

Petitioner, with the assistance of appointed counsel, filed a third amended petition raising, *inter*

*alia*, the ineffectiveness claims he advances here. Between May 27, 2014, when the appellate

judgment issued, and March 21, 2016, when Petitioner filed the third amended petition, an

---

[12] Because Petitioner did not seek review in the Oregon Supreme Court, his direct appeal
proceedings became final when the time for seeking such review expired—thirty-five days after
the Oregon Court of Appeals affirmed his convictions without opinion. *See Gonzalez v. Thaler*,
565 U.S. 134, 150 (2012) (holding that when a petitioner does not appeal to the State's highest
court, "his judgment [becomes] final when his time for seeking review with the State's highest
court expired"); *see also* OR. R. APP. P. 9.05(2) (instructing that "any party seeking to obtain
review of a decision of the Court of Appeals shall file a petition for review in the Supreme Court
within 35 days after the date of the decision of the Court of Appeals").

additional 664 days accrued.[13] Petitioner thus waited until 981 days had elapsed before asserting

claims 4(h) and 4(i), far exceeding the 365 days permitted under the AEDPA.

Petitioner does not dispute that Claims 4(h) and 4(i) are untimely, nor does he argue that

equitable or statutory tolling should apply. *See Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir.

2002) (noting that where a habeas petition falls outside the one-year statute of limitations, the

Petitioner bears "the burden of demonstrating that the limitation period was sufficiently tolled").

Indeed, as explained above, Petitioner effectively abandoned these claims by electing not to file a

reply to the procedural defenses Respondent raised in his response.[14] Because Petitioner declined

to identify any basis on which the Court may find these claims timely, the Court denies habeas

relief as to Claims 4(h) and 4(i).

## II.    Claim Not Alleged in the Third Amended Petition

In his supplemental brief, Petitioner argues that the trial court violated his federal due

process rights when it accepted his waiver to adult court "without adher[ing] to the statutory

requirements [for waiver under ORS 419C.349(3)] as interpreted by *J.C.N.-V.*" (Pet'r's Suppl.

Br. at 9.) In response, Respondent asserts that this claim is not properly before the Court because

---

[13] Petitioner does not argue, and it does not appear, that the ineffective assistance claims argued here relate back to the claims asserted in the timely-filed Amended Petition. *See* FED. R. CIV. P. 15(c)(2).

[14] Respondent also argues that Claims 4(h) and 4(i) are procedurally defaulted. The Court agrees, and Petitioner does not argue that cause and prejudice or actual innocence should excuse the default of either claim. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (explaining that an individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice").

it was not alleged in the Third Amended Petition as required by Rule 2 of the Rules Governing Section 2254 Habeas Cases, 28 U.S.C. foll. § 2254. This Court agrees.

### A.    Legal Standards

A habeas petition must "specify all the grounds for relief available to the petitioner" and must "state the facts supporting each ground[.]" Rule 2(c)(1) and (2) of the Rules Governing Section 2254 Habeas Cases; *see also* *Mayle v. Felix*, 545 U.S. 644, 649 (2005) (explaining that although the rules governing ordinary civil proceedings require that pleadings contain "only a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Habeas Corpus Rule 2(c) "requires a more detailed statement") (simplified). Therefore, "[i]n order to substantially comply with . . . Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified." *Adams v. Armontrout*, 897 F.2d 332, 334 (9th Cir. 1990); *see also* Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2 (explaining that habeas petitions that contain "mere conclusions of law, unsupported by any facts" are "obviously deficient" because it is "the relationship of the facts to the claim asserted that is important"). The Court need not consider a claim that is not properly alleged in the operative petition. *See* *Greene v. Henry*, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002) (explaining that a court need not consider claims that are not raised in the petition).

### B.    Analysis

Petitioner, through his appointed habeas attorney, contends that the claim argued in his supplemental brief — that the trial court's acceptance of his stipulated waiver without adhering

to the standard articulated in *J.C.N.-V.*—is alleged in Claim 4(b) of the Third Amended

Petition.[15] (Pet'r's Suppl. Br. at 6.) Claim 4(b) states:

> [Petitioner's] right to due process of law guaranteed by the Fourteenth
> Amendment to the United States Constitution was violated by his prosecution,
> conviction, and sentence as an adult pursuant to the juvenile court waiver
> provisions of Or. Rev. Stat. § 419C.352 and Or. Rev. Stat. §419C.349(3) and (4)
> for acts committed at age 14.

(Third Am. Pet. at 3.)

It cannot reasonably be argued that the due process claim raised in Petitioner's

supplemental brief is adequately alleged in Claim 4(b), which simply states, in conclusory

fashion, that Petitioner's waiver, conviction, and sentence violate his right to due process. Such a

broad and vague allegation amounts to precisely the kind of "mere legal conclusion" that is

"obviously deficient[,]" Advisory Committee's Note on subd. (c) of Habeas Corpus Rule 2, and

the Third Amended Petition contains no specific factual allegations to otherwise narrow the

claim. Indeed, there is nothing in the Third Amended Petition to suggest that Petitioner intended

Claim 4(b) to be a claim of trial court error predicated on the acceptance of Petitioner's

stipulated waiver without adhering to ORS 419C.349's statutory factors in accordance with

*J.C.N.-V. See Serrano v. Cal. Fourth App. Dist. Ct. of Appeals*, No. 11-2742 IEG (PCL), 2011

WL 6077566, at *3 (S.D. Cal. Dec. 6, 2011) (explaining that a petitioner must allege in a habeas

petition factual allegations that are "sufficiently specific to permit the respondent to assert

appropriate objections and defenses") (simplified). Petitioner's due process claim therefore is not

alleged in the operative petition.

---

[15] Petitioner quotes Claim 4(b) but mistakenly cites Claim 4(a) in the supplemental brief.

The Court reiterates that Petitioner raised the specific due process claim at issue for the first time in a supplemental brief filed in December 2022 after this case already had been pending for the better part of a decade. Although the Oregon Supreme Court did not decide *J.C.N.-V.* until 2016, Petitioner sought PCR relief and waited almost two years after the appellate judgment issued in that proceeding before finally raising the instant claim in this Court. Petitioner also has been represented throughout this case by appointed habeas counsel, who, rather than seeking leave to amend the Third Amended Petition, chose to raise an entirely new claim in a last-minute supplemental brief filed in lieu of a reply addressing Claims 4(h) and 4(i) as the parties had agreed. *See Peed v. Nooth*, No. 08-651-PA, 2011 WL 3420607, at *6 (D. Or. Aug. 4, 2011) (explaining that "[t]he appropriate procedure for adding claims to a case is through the filing of an amended petition, not by alleging them in a supporting memorandum").

Given the lengthy history of the case and the circumstances described above, this Court declines to consider Plaintiff's newly asserted due process claim because it is not alleged in the Third Amended Petition in violation of Habeas Rule 2(c) and therefore is not properly before this Court. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (rejecting the petitioner's claims raised for the first time in his briefing); *see also Harned v. Mills*, No. 6:10-cv-00594-PA, 2013 WL 6115727, at *8 n.3 (D. Or. Nov. 14, 2013) (declining to address multiple claims of ineffective assistance of counsel argued in Petitioner's supporting brief but not alleged in the petition); *Peed*, 2011 WL 3420607, at *6 (summarily dismissing all new claims raised in the petitioner's briefing and advising habeas counsel that "such claims should be raised in an amended pleading or not at all"); *Marquette v. Belleque*, No. 09-624-MO, 2010 WL 4235889, at *2 (D. Or. Oct. 20, 2010) (noting that an *ex post facto* claim argued for the first time in

Petitioner's supporting memorandum was "not contained in the operative pleading for this case and is therefore not eligible for review") (simplified).

### III.    Unargued Claims

Petitioner does not advance in his supporting or supplemental briefs the merits of claims 4(a), (b), (c), (d), (e), (f), (g), and (j) asserted in the third amended petition.[16] Habeas relief thus is precluded as to those claims because Petitioner has failed to sustain his burden of demonstrating entitlement to habeas relief on those claims. *See* 28 U.S.C. § 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case).

///

///

///

///

///

///

///

---

[16] The Court notes that Petitioner filed a *pro se* brief in support of the amended petition on February 23, 2015, conceding that the claims alleged in the Amended Petition—that ORS 419C.352 violates the Eighth and Fourteenth Amendments and that his conviction was obtained by an invalid waiver—are procedurally defaulted. (ECF No. 32.) He argued, however, that cause and prejudice and actual innocence should excuse the default. Habeas counsel did not advance the merits of these claims after filing the Third Amended Petition, nor did habeas counsel renew or otherwise reference Petitioner's arguments in support of these claims. The Court nevertheless reviewed Petitioner's arguments and finds that they are without merit.

## <u>CONCLUSION</u>

For the reasons stated, the Court DENIES the Third Amended Petition for Writ of Habeas Corpus (ECF No. 60), and DISMISSES this proceeding, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore the Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this 8th day of May, 2023.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge